**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| PETER BONAHOOM, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | No. 20-cv-01942 |
| v. | ) ) | Hon. Mary M. Rowland |
| STAPLES, INC., a Delaware Corporation, | ) ) | Magistrate Judge Jeffrey Cole |
| *Defendant*. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT STAPLES, INC.'S MOTION TO DISMISS**

Dated: August 25, 2020

Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................. 1

II.    BACKGROUND ................................................................................................... 2

III.   ARGUMENT ........................................................................................................ 4

      A.    Legal Standard .................................................................................... 4

      B.    Defendant Misrepresented the Charging Capacity of its Power Bank
          Products in Violation of the ICFA .................................................... 5

      C.    Plaintiff's Allegations Satisfy The Particularity Requirements Under
          Rule 9(b) ............................................................................................. 8

      D.    Defendant's Alleged Deceptive Advertising Is An Unfair Practice ............... 10

      E.    Plaintiff Pleads That He Suffered Monetary Damages As A Result Of
          Defendant's Deceptive Conduct ....................................................... 11

      F.    Plaintiff's Complaint Sufficiently Alleges That Defendant Breached Express
          Warranties Regarding Its Power Banks' Charging Capacity ........................ 12

             1.    Defendant had actual knowledge that its Power Bank products did not
                 have the same charging capacity as warranted ........................... 12

             2.    Whether Defendant's product labeling constituted an express warranty
                 as to its charging capacity is a question of fact and cannot be resolved on
                 a motion to dismiss ...................................................................... 13

      G.    Plaintiff Should Be Allowed To Proceed With His Unjust Enrichment
          Claim ................................................................................................. 14

      H.    Any Issues Relating to Nonresident Claims Should be Resolved at the
          Class Certification Stage .................................................................. 15

      I.    Plaintiff has standing to pursue claims for substantially similar
          unpurchased products ....................................................................... 15

IV.   CONCLUSION ................................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>:

*Abramov v. Home Depot, Inc.*,
No. 17-cv-1860, 2018 WL 1252105 (N.D. Ill. 2018) ................................................................ 12

*Aliano v. Louisville Distilling Co., LLC*,
115 F. Supp. 3d 921 (N.D. Ill. 2015) ...................................................................... 5, 11, 14

*Azimi v. Ford Motor Co.*,
977 F. Supp. 847 (N.D. Ill. 1996) ....................................................................................... 4

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) ............................................................................................ 10

*Biffar v. Pinnacle Foods Group, LLC*,
No. 16-cv-0873, 2016 WL 7429130 (S.D. Ill. 2016) .................................... 7, 11, 12, 13, 14, 15

*Brady et al. v. Anker Innovations Limited et al.*,
No. 18-cv-11396, Dkt. 33 (S.D.N.Y., 2020) ......................................................................... 6, 9

*Burton v. Hodgson Mill, Inc.*,
No. 16-cv-1081, 2017 WL 1282882 (S.D. Ill. 2017) ........................................... 7, 12, 13, 15

*Camasta v. Omaha Steaks Int'l, Inc.*,
No. 12-cv-08285, 2013 WL 4495661 (N.D. Ill. 2013) ............................................................ 4

*Carrol v. S.C. Johnsons & Son, Inc.*,
No. 17-cv-05828, 2018 WL 1695421 (N.D. Ill. 2018) ........................................................... 15

*Gubala v. CVS Pharmacy, Inc.*,
No. 14-cv-9039, 2016 WL 1019794 (N.D. Ill. 2016) .............................................................. 5

*Hedges v. Earth, Inc.*,
No. 14-cv-9858, 2015 WL 1843029 (N.D. Ill. 2015) ....................................................... 12, 13

*McDonnell v. Nature's Way Prod., LLC*,
No. 16-cv-5011, 2017 WL 1149336 (N.D. Ill. 2017) ............................................................ 11

*Midwest Grinding Co., Inc. v. Spitz*,
976 F.2d 1016 (7th Cir. 1992)) ........................................................................................... 8

*Miles v. Am. Honda Motor Co.*,
 No. 17-cv-4423, 2017 WL 4742193 (N.D. Ill. 2017) ............................................... 8

*Muir v. NBTY, Inc.*,
 No. 15-cv-9835, 2016 WL 5234596 (N.D. Ill. 2016) ................................................ 5

*Muir v. Playtex Prod., LLC*,
 983 F. Supp. 2d 980 (N.D. Ill. 2013) ................................................................ 5, 11

*Preston v. Kruezer*,
 641 F. Supp. 1163 (N.D. Ill. 1986) ....................................................................

*Reid v. Unilever U.S., Inc.*,
 964 F. Supp. 2d 893 (N.D. Ill. 2013) ............................................................ 4, 7, 13

*Spector v. Mondelez Int'l, Inc.*,
 178 F. Supp. 3d 657 (N.D. Ill. 2016) ................................................................... 11

*Wagner v. Gen. Nutrition Corp.*,
 No. 16-cv-10961, 2017 WL 3070772 (N.D. Ill. 2017) ...................................... 15, 16

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
 536 F.3d 663 (7th Cir. 2008) .............................................................................. 10

*York v. Andalou Nats., Inc.*,
 No. 16-cv-894, 2016 WL 7157555 (S.D. Ill. 2016) ......................................... 13, 14

*Young v. Mophie, Inc.*,
 No. 19-cv-827 (C.D. Cal. 2019) ...................................................................... 6, 7, 14

## I.     INTRODUCTION

Defendant Staples, Inc.'s ("Staples" or "Defendant") Motion to Dismiss Plaintiff's Class Action Complaint (Dkt. 18) ("Motion to Dismiss") largely ignores the plain allegations in Plaintiff's Complaint (Dkt. 1) that Defendant's Power Bank portable charger products did not deliver the same amount of charging capacity as explicitly advertised on Defendant's product packaging. Instead, Defendant makes the completely unsupported factual conclusion that its Power Bank product only represented the "internal" capacity of the product, rather than the actual capacity that an ordinary consumer like Plaintiff, would expect for it to deliver to their devices. Not only are such arguments entirely inappropriate at the motion to dismiss stage, but they also fly in the face of what a reasonable consumer such as Plaintiff would determine Defendant's packaging advertised. Plaintiff, like any ordinary consumer, specifically purchased Defendant's products to be able to charge his electronic devices—he did *not* purchase them to have a portable battery pack with some internal capacity regardless of how much battery charge they actually provided. While Defendant makes a point to note that this lawsuit is just one of many recently filed against portable battery manufacturers, as discussed further below, Defendant fails to note that many of these suits have been upheld by other courts across the country and only further support Plaintiff's claims. Nor can Defendant argue that Plaintiff fails to allege any deception that its product did not live up to its promise of charging his phone "2x" because he did not specify what brand and model of cell phone he was trying to charge. Ironically, Defendant's argument on this point completely misses the fact that the *actual* charging capacity of Defendant's Power Bank product alleged by Plaintiff is not even sufficient to provide the up to "2x" charges for the iPhone 7 that Defendant claims was the intended reference device to its charging claims.

Defendant's other procedural arguments are similarly deficient, as Plaintiff has not actually

alleged any claims under other states laws, nor has Plaintiff attempted to assert claims for products that he has not purchased. Rather, Plaintiff is simply seeking to *represent* a class of consumers who purchased Defendant's deficient Power Bank products in other states, as well as consumers who purchased Power Bank products with different capacities than the one he purchased. As such, Defendant's arguments are entirely misplaced. To the extent that Defendant has any challenges to Plaintiff's standing to represent any proposed class of consumers, it can raise such challenges at the appropriate time when class certification is to be decided. In sum, Plaintiff's clear, plain, allegations that Defendant misrepresented the charging capacity of its Power Banks products are more than sufficient to meet the pleading standards under Fed. R. Civ. P. 8 and 9.

## II.     BACKGROUND

Defendant is a major office supply retailer that operates stores all across North America, including in Illinois. (Complaint, Dkt. 1, at ¶ 8.) Seeking to capitalize on consumer demand for portable compact chargers that can be used to charge electronic devices on the go, Defendant created its "Power Bank" brand of portable charges. (*Id.* at ¶ 13.) Defendant's Power Bank products advertise their battery capacity in mAh (milliamps per hour) to disclose to consumers the maximum amount of energy that any particular Power Bank can retain and deliver to their devices. (*Id.*) This advertised charging capacity is critical because almost all portable consumer electronic devices – i.e. cell phones, tablets, etc. – also have a disclosed battery capacity that is similarly measured in mAh. (*Id.* at ¶ 14.) Accordingly, when consumers shop for portable battery chargers such as Defendant's Power Bank products, they specifically rely on the advertised mAh battery capacity so that they can determine whether any particular portable charger will be able to meet their charging needs. (*Id.* at ¶ 15.) Being well aware of this, Defendant prominently features the mAh capacity for its Power Bank portable chargers directly on its product labeling for products

2

sold in-stores, and on its website for consumers who purchase them through its online store. (Complaint at ¶ 16; Dkt. 18-1.) Indeed, the mAh capacity of Defendant's Power Bank products is the main defining characteristic that differentiates the various Power Bank products Defendant sells. (Complaint at ¶ 16.) The mAh capacity is thus directly correlated to the price of its Power Bank products. (*Id.* at ¶ 17.)

However, the battery capacity advertised by Defendant was false and misleading because its Power Bank products fail to actually deliver the amount of charging power claimed. (*Id.* at ¶ 18.) Indeed, repeated testing of Defendant's Power Bank products has revealed that they are only capable of delivering 70% of the charging power advertised. (*Id.* at ¶¶ 18, 30.) Thus, a consumer who purchased one of Defendant's Power Bank products that claimed a capacity of 10,000 mAh, would only be able to obtain just 7,000 mAh of the claimed 10,000 mAh to charge their device. (*Id.* at ¶ 19.) Plaintiff's experience is exemplary of that of other consumers across the country in this regard.

In August 2018 Plaintiff visited one of Defendant's retail store locations in Chicago, Illinois looking to purchase a portable battery charger that had sufficient battery capacity to keep his cell phone charged for a full day and was sold at a reasonable price. (*Id.* at ¶ 24.) At the store Plaintiff saw one of Defendant's 5,000 mAh Power Bank products that was on sale for $9.99 and that specifically advertised that it had "Up to 2x Charges." (*Id.* at ¶ 25; Dkt. 18-1.) Based on Defendant's representations regarding the charging capacity of its Power Bank product, and finding that the price was reasonable, Plaintiff purchased the Power Bank. (*Id.* at ¶ 26.) However, despite following Defendant's instructions for using the Power Bank, Plaintiff found that it was insufficient for charging his cell phone. (*Id.* at ¶ 28.) In fact, testing of Plaintiff's Power Bank revealed that it on average only delivered 3,400 mAh of its claimed 5,000 mAh battery charge

capacity—just 70% of what Defendant advertised its Power Bank would be able to deliver. (Complaint at ¶ 29.) Plaintiff was thus deceived, like the other purchasers of Defendant's Power Bank products, into purchasing a product that he believed would be capable of delivering the specific amount of energy claimed on the packaging when it in fact was not. (*Id.* at ¶ 32.) Had Plaintiff known that Defendant's representations about the charging capacity of its Power Bank products were misleading he would not have purchased his Power Bank. (*Id.* at ¶ 31.)

## III.    ARGUMENT

### A.    Legal Standard

Defendant challenges Plaintiff's ICFA, breach of warranty, and unjust enrichment claims pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. to Dismiss at 6–12.) As such, "the Court must construe[] the complaint 'in the light most favorable to the nonmoving party, accept[ing] well-pleaded facts as true, and draw[ing] all inferences in [his] favor." *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 904 (N.D. Ill. 2013). While a plaintiff "must establish that the requested relief is plausible on its face," *Camasta v. Omaha Steaks Int'l, Inc.*, No. 12-cv-08285, 2013 WL 4495661, at *7 (N.D. Ill. Aug. 21, 2013), "[p]lausibility . . . does not imply that a court should decide whose version to believe, or which version is more likely than not." *Reid*, 964 F. Supp. 2d at 904.

Where a complaint raises allegations of misrepresentation the heightened pleading standard under Fed. R. Civ. P. 9(b) applies. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). However, Rule 9(b) simply requires that the plaintiff "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Azimi v. Ford Motor Co.*, 977 F. Supp. 847, 852 (N.D. Ill. 1996) (internal citations omitted).

### B. Defendant Misrepresented the Charging Capacity of its Power Bank Products in Violation of the ICFA.

Under the ICFA "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive" a "reasonable consumer." *Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 987, 89 (N.D. Ill. 2013). Here, Plaintiff plainly alleges that consumers rely on the battery capacity disclosed on portable charging products to determine whether the amount of charging power *delivered* will be sufficient to meet their charging needs. (Complaint at ¶¶ 14, 16, 18–19, 25, 29–30.) Indeed, contrary to Defendant's arguments, the only relevant factor for consumers when buying a portable battery is how much charge it can deliver—what possible use is any charge capacity that cannot be delivered? Taking Defendant's argument that it could not have possibly engaged in any deceptive conduct because it accurately disclosed the internal battery capacity to its logical conclusion, Defendant could have sold Power Bank battery packs that delivered just 1 mAh of charging power and its purchasers would have no recourse. (Mot. to Dismiss at 6.) Such a result is clearly absurd for the exact reasons pled in Plaintiff's Complaint that the only information relevant to purchasers of Defendant's Power Bank products is how much useable charge they can actually deliver. (Complaint at ¶¶ 14–16, 22.) As found by numerous other courts in this district, such conduct is plainly deceptive. *See, e.g., Muir v. NBTY, Inc.*, No. 15-cv-9835, 2016 WL 5234596, at *1, *8 (N.D. Ill. Sept. 22, 2016) (allegations that defendant's product did not contain the same amount of active ingredient as stated on the label sufficient to plead a claim under the ICFA); *Gubala v. CVS Pharmacy, Inc.*, No. 14-cv-9039, 2016 WL 1019794, at *17 (N.D. Ill. Mar. 15, 2016) (allegations that defendant's product did not contain the amount of protein as promised on the label sufficient to establish that plaintiff was misled); *Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 931 (N.D. Ill. 2015) (plaintiff sufficiently alleged a deceptive act where the defendant advertised its liquor product was "hand crafted" when in fact it was mass-produced).

5

Critically, numerous courts looking at the exact allegations at issue here, involving deceptively advertised portable chargers, have *also* come to the same conclusion.

In *Brady et al. v. Anker Innovations Limited et al.*, No. 18-cv-11396, Dkt. 33 (S.D.N.Y. Jan. 13, 2020)[1] the plaintiffs, as Plaintiff does here, pled that they "believed that the Power Banks they purchased could deliver a charge to their PEDs [personal electronic devices] that was reflective of the advertised capacity." (*Brady*, No. 18-cv-11396, Ex. A, at 3.) However, "[d]espite their expectations . . . Plaintiffs came to realize that the Power Banks they had purchased were incapable of delivering the capacity that had been represented to them." (*Id.*) Specifically, "testing showed that Brady's Power Bank, which had been advertised as having a '5200 mAh' capacity, had an 'Actual Capacity' of 3285 mAh." (*Id.*) The court in *Brady* found that such allegations were sufficient to state causes of action under California consumer protection statutes for fraudulent conduct. (*Id.* at 15–16.)[2]

Similarly, in *Young v. Mophie, Inc.*, No. 19-cv-827 (C.D. Cal. Oct. 9, 2019)[3] the plaintiffs similarly pled that "'the most important factor for consumers' in choosing a charger 'is its capacity,' as measured by mAh . . . Consumers . . . have a strong preference for, and pay more for, Power Banks with a higher mAh." (*Young*, No. 19-cv-827, Ex. B, at 3.) Accordingly, the defendant's products in *Young* were deceptively advertised because they could never "actually deliver [as] much power" as stated on their product labeling. (*Id.* at 2–3.) The court in *Young* also found that the plaintiffs' allegations were sufficient to state causes of action under California and Florida consumer protection laws, stating that the allegations raise questions of fact as to what a

---

[1] Attached hereto as <u>Exhibit A</u>.
[2] The Court even found that such allegations satisfied Rule 9(b) requirements other than requiring Plaintiffs to clarify exactly which of the named defendants made the representations. (*Brady*, No. 18-cv-11396, Ex. A at 16.)
[3] Attached hereto as <u>Exhibit B</u>.

6

reasonable consumer "would understand regarding the meaning of 'capacity[.]'" (*Young*, No. 19-cv-827, Ex. B, at 12–13.)

Plaintiff's allegations here are identical in every manner to those in *Brady* and *Young*. Critically, as the court in *Young* found, Defendant's arguments that its labeling could not be deceptive because it accurately depicted "the internal *capacity* of the battery "(Mot. to Dismiss at 6) (emphasis in original) should be rejected as an improper attempt to argue an issue of fact at the pleading stage. (*See Young*, No. 19-cv-827, Ex. B, at 11–12.) Indeed, Defendant's product labeling does not feature *any* disclosures that in any way suggest that the featured battery capacity refers solely to the internal battery capacity rather than the amount of charging power that it would deliver. (*See* Dkt. 18-1.) As such not only are Plaintiff's allegations in his Complaint unchallenged, but so are his allegations regarding "what a typical consumer would understand" Defendant's packaging to represent. (*See Young*, No. 19-cv-827, Ex. B, at 12.) It is axiomatic that at the motion to dismiss stage the court should not "decide whose version to believe, or which version is more likely than not" (*Reid*, 964 F. Supp. 2d at 904) and "the determination of whether or not a reasonable consumer could be misled is an intricate question of fact that is best informed by a pool of members of the community[.]" *Burton v. Hodgson Mill, Inc.*, No. 16-cv-1081, 2017 WL 1282882, at *6 (S.D. Ill. April 6, 2017); *see also Biffar v. Pinnacle Foods Group, LLC*, No. 16-cv-0873, 2016 WL 7429130, at *3 (S.D. Ill. Dec. 22, 2016).

Finally, it is worth noting that while Defendant attempts to scramble the egg by arguing that Plaintiff failed to sufficiently allege that he did not receive the same amount of "2x" charges as represented on Defendant's packaging, Defendant's arguments actually cut against it. Specifically, Defendant makes a show of noting that Plaintiff did not disclose what brand and model of cell phone he was trying to charge using his Power Bank and that the "2x Charges"

advertisement on its product packaging was only in reference to an iPhone 7. (Mot. to Dismiss at 6–7.) However, publicly available information shows that an iPhone 7 takes 1960 mAh to fully charge.[4] Accordingly, Plaintiff's Complaint *does* in fact allege that Defendant's Power Bank, which was only able to provide 3,400 mAh of charging power, "could not charge an iPhone 7 'up to 2x,' as would be necessary to demonstrate that his product's label was inaccurate or misleading" (Complaint at ¶ 29; Mot. to Dismiss at 6–7.)

In short, Plaintiff plainly alleges that Defendant's product labeling for its Power Bank products would have deceived a reasonable consumer because such products are specifically purchased for their *charging* capacity—which was far less than the capacity explicitly advertised by Defendant. Given that Defendant's product labeling does not present any additional information to the contrary, that Plaintiff's allegations should be viewed in the light most favorable to him, and that generally the arguments raised by Defendant as to what a reasonable consumer would determine do not lend themselves to resolution on a Motion to Dismiss, as in *Brady* and *Young* Plaintiff's consumer fraud claims sufficiently allege deceptive conduct.

### C. Plaintiff's Allegations Satisfy The Particularity Requirements Under Rule 9(b).

Plaintiff does not dispute that his claims under the ICFA have to "meet the heightened pleading standard of Rule 9(b). *See Miles v. Am. Honda Motor Co.*, No. 17-cv-4423, 2017 WL 4742193, at *2 (N.D. Ill. Oct. 19, 2017). However, in effect Rule 9(b) simply requires that Plaintiff "describe[] 'the who, what, when, where, and how of the fraud'" such that the allegations "provide[] a 'general outline of the fraud scheme' sufficient to 'reasonably notify the defendants of their purported role[.]'" *Id.* (citing *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020

---

[4]   *See* www.gsmarena.com/iphone_7_has_a_1960_mah_battery_iphone_7_plus_reaches_2900_
mah-news-20469.php.

(7th Cir. 1992)). Here, just as the court found in *Brady* when considering nearly identical allegations, Plaintiff's Complaint plainly meets this requirement. While Defendant argues that Plaintiff fails to explain "*how"* Defendant's Power Bank labeling was deceptive (Mot. to Dismiss at 7), Defendant ignores Plaintiff's allegations that Defendant's Power Bank products "advertise their battery capacity [in mAh] so as to inform consumers about the maximum amount of energy any particular Power Bank portable battery can retain *and deliver* to their device." (Complaint at ¶ 14) (emphasis added). Further, Plaintiff alleges that consumers shop for such portable battery products based on the battery capacity of their own electronic devices—making it clear that consumers only consider the charging power that can actually be delivered to their devices when deciding to make their purchase. (*Id.* at ¶ 15.) Finally, putting the pieces together, Plaintiff alleges that "[w]hile Defendant advertises that its Power Bank products are able to provide a specific amount of charge . . . testing . . . has revealed that the battery capacity of the Power Bank products was significantly less than advertised, and only capable of delivering . . . 30% less charge than advertised." (*Id.* at ¶¶ 18, 45.) While Defendant may disagree about whether a reasonable consumer would find that the advertised charging capacity on its Power Bank products represented the amount of energy that the product can actually deliver, Defendant cannot legitimately argue that Plaintiff fails to sufficiently explain "how" Defendant's labeling was deceptive. Indeed, these were the same exact allegations the court in *Brady* found sufficient to satisfy Rule 9(b) and which should be found to be sufficient here. (*Brady*, No. 18-cv-11396, Ex. A, at 16 (finding that the plaintiffs "have explained why the statements made were . . . fraudulent" where they "provid[ed] a table comparing the Power Banks' 'Capacity Represented' and their 'Actual Capacity' and (2) maintaining that they would not have purchased the product . . . had they been aware 'that the Product's mAh was really less' than represented").

9

### D. Defendant's Alleged Deceptive Advertising Is An Unfair Practice.

Defendant baldly argues that Plaintiff fails to plead any allegations of unfair conduct under the ICFA. Specifically, Defendant claims that Plaintiff "does not allege any facts as to what Illinois public policy the alleged conduct offends, how consumers have suffered "substantial injury," or how this conduct was immoral, unethical, or oppressive." (Mot. to Dismiss at 8.) Defendant's argument, however, simply outright ignores Plaintiff's plain allegations that Defendant deceptively advertised its Power Bank portable battery chargers as being capable of delivering a greater charge than they actually could. (Complaint at ¶¶ 18–19, 45.) In fact Plaintiff specifically spells out Defendant's unfair conduct when he alleges that Defendant "affirmatively represent[ed] that its Power Bank products can provide a specific charge amount when the products sold were in fact only capable of delivering a significantly lower charge amount[.]" (*Id.* at ¶ 45.) Numerous courts in this District, including most importantly the Seventh Circuit, have found that such allegations of deceptive advertising are more than sufficient to plead a claim for unfair conduct under the ICFA.

In *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663 (7th Cir. 2008) the Seventh Circuit found that the plaintiffs' allegations that the defendant "disseminat[ed] . . . false advertisements" and that the "plaintiffs suffered a loss as a result of" the false advertisements, "support t[he] statutory definition of unfairness under the Consumer Fraud Act." *Windy City*, 536 F.3d at 672. In *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639 (7th Cir. 2019) the Seventh Circuit similarly found that the plaintiff's allegations that the defendant "misrepresent[ed] . . . the quantity of chocolate within" and made consumers "believe that they are receiving more chocolate than the actual amount within each box" was sufficient to satisfy "federal notice-pleading standards" of unfair practices." *Benson*, 944 F.3d at 647. Here too, Plaintiff sufficiently alleges that Defendant engaged in unfair practices by falsely advertising the

charging capacity of its Power Bank products and making Plaintiff and other consumers reasonably believe that they would receive a different product than they actually purchased.

### E. Plaintiff Pleads That He Suffered Monetary Damages As A Result Of Defendant's Deceptive Conduct.

In arguing that Plaintiff has failed to allege that he suffered any actual damages Defendant once again disregards the relevant legal standard and is asking the Court to simply ignore the allegations pled by Plaintiff. Plaintiff's Complaint specifically states that: "[a]s a direct and proximate cause of Defendant's deceptive practices Plaintiff . . . suffered actual damages, *including monetary losses* for the purchase price of Defendant's Power Bank products which did not have the same charging capacity as advertised" (Complaint at ¶ 49) (emphasis added); and that "Plaintiff . . . would not have purchased them or would have paid materially less for them had they known that the advertised battery capacities were not accurate[.]" (*Id.* at ¶ 23.) Numerous courts have found these same allegations sufficient to plead actual injury. *See Aliano*, 115 F. Supp. 3d at 931 (finding allegations that the plaintiff "paid more than [he] would have for the [product] because of the deception" "adequately allege an actual injury" and dismissing the defendant's arguments that such allegations "are too conclusory"); *see also McDonnell v. Nature's Way Prod., LLC*, No. 16-cv-5011, 2017 WL 1149336, at *3 (N.D. Ill. Mar. 28, 2017) (collecting authorities); *Muir*, 983 F. Supp. 2d 980, 990; *Biffar*, 2016 WL 7429130, at *4.

Defendant's reliance on *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657 (N.D. Ill. 2016) to argue that Plaintiff fails to allege injury is unfounded. Unlike Plaintiff's allegations, in *Spector* the plaintiff never alleged that the nutritional product was not "effective" or that she did not experience the "four hours of 'nutritious steady energy'" that was supposedly deceptively advertised. *Spector*, 178 F. Supp. 3d at 673. Here, Plaintiff *does* allege that Defendant's Power Bank product did not provide the stated amount of charging capacity that was advertised and which

11

he paid for. (Complaint at ¶¶ 28, 29, 31, 32.) Nor does Defendant provide any support for its attempt to impugn Plaintiff's motives for bringing this suit and effectively impose a statute of limitations based on when he was first dissatisfied with his Power Bank product. Indeed, adopting Defendant's argument would effectively eliminate the statute of limitations for ICFA claims *and* only allow consumers recourse where the product they purchased was completely useless—an extreme outcome that is clearly not in line with the purpose of the ICFA or the relevant caselaw. (*See* Mot. to Dismiss at 10) (arguing that "Plaintiff does not allege that his charger failed to charge his phone" altogether).

**F.    Plaintiff's Complaint Sufficiently Alleges That Defendant Breached Express Warranties Regarding Its Power Banks' Charging Capacity.**

      1.    <u>Defendant had actual knowledge that its Power Bank products did not have the same charging capacity as warranted.</u>

Defendant is correct that Plaintiff did not provide pre-suit notice to Defendant. (Mot to Dismiss at 10.) However, Illinois law is clear that pre-suit notice is not required to state a claim for breach of warranty when "the defendant had actual knowledge of the product's defect." *Biffar*, 2016 WL 7429130, at *5; *Burton*, 2017 WL 1282882, at *6 (rejecting argument regarding pre-suit notice and stating, "Plaintiff . . . claims that the seller had actual knowledge of the breach of the warranty. Her theory is essentially that the Defendant had knowledge of the falsity of the 'all natural' label in light of the ingredients in the product. A reasonable jury could reach this conclusion"); *Hedges v. Earth, Inc.*, No. 14-cv-9858, 2015 WL 1843029, at *3 (N.D. Ill. Apr. 21, 2015); *see also Abramov v. Home Depot, Inc.*, No. 17-cv-1860, 2018 WL 1252105, at *4 (N.D. Ill. Mar. 12, 2018) (finding that because the defendant "actively argues that its four-by-fours were not 4"x4" in cross-section" and thus "admits knowledge of the alleged defect" the plaintiff "was not required to provide pre-litigation notice of his warranty claims"). Here, as in the cases cited

above, Plaintiff alleges that "Defendant knew or should have known at all relevant times that its Power Bank products were not capable of delivering the amount of energy represented and advertised[.]" (Complaint at ¶¶ 20, 46, 63.) In fact Defendant's defense is largely based on its own admittance that it only intended to represent the "internal *capacity*" of its Power Banks' batteries rather than the "amount of energy the charger can *provide*"—thus implicitly acknowledging that it knew that its Power Bank products could not deliver the amount of charging power stated on the packaging. These are the same circumstances that other courts have found sufficient to satisfy the pre-suit notice requirements under 810 ILCS 5/2-607(3)(a). *See Burton*, 2017 WL 1282882, at *6; *Hedges*, 2015 WL 1843029, at *3.

> 2. Whether Defendant's product labeling constituted an express warranty as to its charging capacity is a question of fact and cannot be resolved on a motion to dismiss.

Defendant's argument that the labeling on its Power Bank packaging did not warrant that they were capable of delivering a specific charge amount is premature and inappropriate for decision on a motion to dismiss. Whether a given statement constitutes an "affirmation of fact or promise" is usually "a question of fact that cannot be resolved on a motion to dismiss." *See Reid*, 964 F. Supp. 2d at 908–909; *Biffar*, 2016 WL 7429130, at *5. Defendant cannot seek dismissal based on its own unilateral interpretation that the product labeling at issue only disclosed the amount of charge that its Power Bank batteries could hold rather than advertising how much charging power they could deliver. *See York v. Andalou Nats., Inc.*, No. 16-cv-894, 2016 WL 7157555, at *4 (S.D. Ill. Dec. 8, 2016) ("Defendant's intentions in branding its products with the phrase 'natural' are not a proper inquiry at this stage in the litigation"). Just as Defendant argues that its labeling did not make any representation that the mAh listed related to the amount of charging power its products could deliver, neither did they make any representation that it related

solely to the internal battery capacity. Most importantly, and as previously argued, it is difficult to understand how the mAh labeling in question did not make any affirmation of fact or promise regarding the charging capacity of Defendant's Power Bank products when that was the sole factor that consumers consider when deciding to purchase a portable charging product. (Complaint at ¶¶ 15, 16, 22.) In short, Defendant's arguments are at best attacks on the merits of Plaintiff's express warranty claim, and should be rejected here at the motion to dismiss stage. (*See Young*, No. 19-cv-827, Ex. B, at 13–14) (finding that the plaintiffs stated a claim for breach of express warranty and under the Magnus-Moss Warranty Act where the plaintiffs alleged that they "purchased the Power Banks after reading and relying on [the defendant's] misrepresentations regarding the Power Banks' capacities" and the defendant "breached its express warranties by selling Power Banks which did not have the ability to deliver the stated capacity").[5]

### G. Plaintiff Should Be Allowed To Proceed With His Unjust Enrichment Claim.

Defendant is correct that Plaintiff's unjust enrichment claim is based on the same allegations of deceptive and unfair conduct as his ICFA claim. (Mot. to Dismiss at 12.) As such, where a plaintiff sufficiently alleges "claims under the ICFA and for breach of warranty," as Plaintiff has done here, the plaintiff should be allowed to proceed in the alternative with an unjust enrichment claim that is brought on the basis of the same underlying conduct. *Biffar*, 2016 WL 7429130, at *6; *Burton*, 2017 WL 1282882, at *3 (when a plaintiff's ICFA and breach of warranty claims survive dismissal, "[his] unjust enrichment claim may also survive" dismissal); *York*, 2016 WL 7157555, at *3; *Aliano*, 115 F. Supp. 3d at 934. As explained above, and as supported by two other courts that have considered the same exact issue as before the Court here, Plaintiff has

---

[5] Because Plaintiff's Magnuson-Moss warranty claim is premised on his claim for breach of express warranty under Illinois law, for the reasons argued above, and as found by the court in *Young*, Plaintiff has also stated a valid claim under the Magnuson-Moss Warranty Act.

sufficiently alleged that Defendant's advertising was deceptive such that it would be unjust for it

retain the benefit conferred by Plaintiff and the other Class members by their purchases of its

Power Bank products.

### H. Any Issues Relating to Nonresident Claims Should be Resolved at the Class Certification Stage.

Defendant's arguments that Plaintiff cannot allege claims under other states' consumer

protection laws are at bottom a premature attempt to challenge Plaintiff's class allegations. (Mot.

to Dismiss at 13–14.) The fact of the matter is that Plaintiff is not alleging claims under other

states' laws, and has not yet moved for class certification seeking to represent nonresident class

members. Numerous courts have held that in identical circumstances any arguments about whether

Plaintiff is allowed to represent nonresident class members should be properly addressed at the

class certification stage and not on a motion to dismiss. *Biffar*, 2016 WL 7429130, at *6 ("[the

defendant] argues that [the plaintiff] cannot establish general or specific jurisdiction . . . as to the

non-Illinois putative class . . . . The Court . . . finds that this issue must be addressed later in the

litigation [at the class certification stage]"); *see also Burton*, 2017 WL 1282882, at *7.

### I. Plaintiff has standing to pursue claims for substantially similar unpurchased products.

While Defendant asserts that plaintiff does not have standing to bring claims for other

Power Bank products that he did not purchase (Mot. to Dismiss at 14–15), "the majority of the

courts that have carefully analyzed the question hold that a plaintiff may have standing to assert

claims for unnamed class members based on products he or she did not purchase so long as the

products and alleged misrepresentations are substantially similar." *Carrol v. S.C. Johnsons & Son,

Inc.*, No. 17-cv-05828, 2018 WL 1695421, at *4 (N.D. Ill. Mar. 29, 2018); *see also Wagner v.

Gen. Nutrition Corp.*, No. 16-cv-10961, 2017 WL 3070772, at *5 (N.D. Ill. July 19, 2017)

(collecting authorities). Indeed, in *Wagner* the court found that the plaintiff had standing to bring claims for dietary supplements that he never purchased even though they came in different doses (1,500 mg versus the 5,000 mg the plaintiff purchased), and even entirely different forms (chewable tablets versus the dissolvable powder the plaintiff purchased). 2017 WL 3070772, at *5. Critical to the court's decision in *Wagner* was that ultimately all of the products at issue stated that they contained a specific chemical ingredient and made the same claims regarding their efficacy that the plaintiff alleged were false. *Id.* (stating "[a]ccordingly, based on Plaintiff's allegations, the Products have the same key ingredient of glutamine and all of the Products contain misrepresentations for the same reason"). Here, Plaintiff's allegations are similarly based on the same claims featured on all of Defendant's products that they are able to deliver the stated amount of charging power. (Complaint at ¶¶ 16–17.) Accordingly, "nothing in the complaint or the parties' briefs suggests that these differences" – which are the same as different "doses" of the same vitamin product – "are material." *Id.* As such, Plaintiff has sufficient standing to bring claims on behalf of unnamed class members for any of Defendant's Power Bank products that they purchased.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff Peter Bonahoom respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety.[6]

---

[6] To the extent that the Court finds that Plaintiff has not sufficiently pled any of his claims, Plaintiff respectfully requests that he be granted leave to amend to allege additional facts in further support.

Dated: August 25, 2020

Respectfully Submitted,

PETER BONAHOOM, individually and on behalf of a class of similarly situated individuals,

By: /s/ Eugene Y. Turin
One of Plaintiff's Attorneys

Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 25, 2020, I electronically filed the foregoing *Memorandum of Law in Opposition to Defendant Staples, Inc.'s Motion to Dismiss* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ Eugene Y. Turin

18